IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

COURTNEY WALTERS, as
personal representative of the
estate of Joshua Bell Farmer,

        Plaintiff,

    v.                         Case No.

MARK HUNTER, as sheriff
of Columbia County, Florida;
ERIN ALFORD; BRITTANY
BINES; CEDRIC MAY; ASHLEY
STALVEY; and JOHN DOE, an
unknown individual employed by
the Columbia County Sheriff's
Office,

        Defendants.
_____/

COMPLAINT

COMES NOW the plaintiff, Courtney Walters, as personal representative of the estate of Joshua Bell Farmer, and complains and alleges against the defendants as follows.

1.    Joshua Bell Farmer was a pretrial detainee at the Columbia County Detention Facility. Bell Farmer suffered from a life-threatening seizure disorder for which he had to take prescription medication multiple times per day. Bell Farmer did not receive his medications as prescribed, and

1

he died of a seizure on January 15, 2022. This is an action under 42 U.S.C. § 1983 for deliberate indifference to Bell Farmer's serious medical needs. This is also an action under Florida law for wrongful death.

PARTIES

2.    The plaintiff is Courtney Walters. Walters was appointed personal representative of the estate of Bell Farmer on August 18, 2022, by the Circuit Court for Columbia County, Florida. That court issued letters of administration to Walters that same day.

3.    Defendant Mark Hunter is—and was at all times material hereto —the sheriff of Columbia County, Florida. Sheriff Hunter is sued in his official capacity.

4.    As sheriff, Hunter was responsible for the development, promulgation, and implementation of the policies, practices, and customs of the Columbia County Detention Facility. Hunter was also responsible for the hiring, training, control and supervision of the personnel employed at the Columbia County Detention Facility.

5.    Defendant Erin Alford was at all times material hereto a licensed nurse employed by the Columbia County Sheriff to provide medical care at the Columbia County Detention Facility.

6.     Defendant Brittany Bines was at all times material hereto a licensed nurse employed by the Columbia County Sheriff to provide medical care at the Columbia County Detention Facility.

7.     Defendant Cedric May was at all times material hereto a Lieutenant employed by the Columbia County Sheriff as part of the command staff in charge of the Columbia County Detention Facility.

8.     Defendant Ashley Stalvey was at all times material hereto a licensed nurse employed by the Columbia County Sheriff to provide medical care at the Columbia County Detention Facility.

9.     Defendant John Doe was at all times material hereto an employee of Sheriff Hunter.  John Doe's identity is unknown at this time, but it is expected to be revealed in discovery in this case.

10.    All defendants were acting within the course and scope of their employment and under color of law at all times material hereto.

JURISDICTION & VENUE

11.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the Constitution and laws of the United States.  This Court has supplemental subject matter jurisdiction over claims under state law pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because defendant Hunter resides in this judicial district and all defendants are residents of Florida.   Venue is also proper in this judicial district pursuant to § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

FACTS COMMON TO ALL COUNTS

**Sheriff Hunter's Policy of Encouraging
Inmates to Refuse their Prescription Medications**

13.     Sheriff Hunter had a policy or custom of charging inmates at the Columbia County Detention Facility a fee for every prescription medication provided by the Columbia County Detention Facility.

14.     The fee would be charged every time a new prescription was filled and every time an existing prescription was refilled.

15.     The fee was sufficiently large to deter inmates from receiving prescription medications provided by the Columbia County Detention Facility.

16.     Sheriff Hunter additionally had a policy or custom of explaining to inmates that they could avoid the fee by refusing their medications from the detention facility and instead requesting that their families obtain their medications from other sources and bring such medications to the Columbia County Detention Facility.   To refuse medications under this policy or

4

custom, an inmate was required to sign a refusal form which contained language purporting to release the sheriff and medical providers from liability.

17.    On information and belief, despite the explanation to inmates that they could have their families bring medications, Sheriff Hunter had a policy or custom of leaving it to the discretion of staff at the Columbia County Detention Facility whether to allow outside medications into the facility.

18.    On information and belief, staff at the Columbia County Detention Facility would ordinarily decline to accept outside medications into the facility.

19.    One officer formerly employed at the Columbia County Detention Facility had only seen outside medications allowed into the facility on one or two occasions over a matter of years.

20.    Sheriff Hunter had a policy or custom of making it difficult for an inmate who has once signed a refusal form to later change his mind and receive prescription medications from the Columbia County Detention Facility.

21.    These policies or customs had the effect of deterring inmates from receiving prescription medications provided by the Columbia County Detention Facility.

22.    These policies or customs had the effect in many cases of preventing inmates from receiving prescription medications altogether.

23.    These effects were obvious and predictable consequences of the policies or customs alleged above.

24.    On information and belief, the very purpose of the policies or customs alleged above was to encourage inmates to refuse their prescription medications and therefore save the sheriff the cost of providing such medications.

25.    On information and belief, Sheriff Hunter was aware that the effect of his policies or customs alleged above was that a number of inmates refused their prescription medications and did not receive their medications from any source.

### Sheriff Hunter's Policy of Having No Medical Personnel on Duty Outside of Business Hours

26.    Sheriff Hunter had a policy or custom of having no medical staff on duty at the Columbia County Detention Facility outside of normal business hours.

27.    Under this policy or custom, no physician, nurse, or other medical provider was on duty at the Columbia County Detention Facility from about 6:00 p.m. on Fridays to about 8:00 a.m. on Mondays.

28.    This policy or custom had the effect of denying reasonable medical care to inmates who needed medical attention between about 6:00 p.m. on Fridays and about 8:00 a.m. on Mondays.

29.    This policy or custom had the effect of preventing inmates from addressing issues related to their prescription medications between about 6:00 p.m. on Fridays and about 8:00 a.m. on Mondays.

30.    This policy or custom had the effect of preventing an inmate who has previously signed a medication refusal form from changing his mind and requesting prescription medications between about 6:00 p.m. on Fridays and about 8:00 a.m. on Mondays.

31.    These effects were obvious and predictable consequences of the sheriff's policy of having no medical staff on duty between about 6:00 p.m. on Fridays and about 8:00 a.m. on Mondays.

### Sheriff Hunter's Policy of Not Calling for an Ambulance When an Inmate Suffers a Seizure

32.    Sheriff Hunter had a policy or custom of not calling for an ambulance when an inmate suffers a seizure at the Columbia County Detention Facility.

### The Death of Joshua Bell Farmer

33.    Bell Farmer was arrested on May 5, 2021, and thereafter held as a pretrial detainee in the Columbia County Detention Facility.

7

34.    Bell Farmer was 27 years old at the time of his arrest.

35.    Bell Farmer suffered from a life-threatening seizure disorder for which he took prescription medications.

36.    Sheriff Hunter and the medical staff at the Columbia County Detention Facility knew about Bell Farmer's seizure disorder and prescription medications because Bell Farmer had previously been held in custody at the Columbia County Detention Facility.

37.    On the day of his arrest, May 5, 2021, medical staff at the detention facility ordered the medical restriction that Bell Farmer be assigned to a lower bunk as a result of his seizure disorder.

38.    The next day, May 6, 2021, defendant Nurse Alford conducted a medical intake screening of Bell Farmer.

39.    Nurse Alford noted that Bell Farmer said he suffers from seizures and is taking certain prescription medications.

40.    On May 10, Nurse Alford phoned the pharmacy where Bell Farmer got his medications and verified Bell Farmer's prescriptions.

41.    On May 12, Bell Farmer asked Nurse Alford for his anti-seizure medications.

42.     Nurse Alford discussed the matter with nonparty physician Dr. Ernest DeLeon, who then prescribed the same anti-seizure medication Bell Farmer had been taking prior to his arrest.

43.     Later on May 12, Bell Farmer had a seizure.

44.     Over the next two months, Dr. DeLeon ordered at least two blood tests to measure the levels of Bell Farmer's anti-seizure medications.

45.     On July 13, Dr. DeLeon increased the dosage of Bell Farmer's anti-seizure medications.

46.     During his incarceration at the Columbia County Detention Facility, Bell Farmer received small deposits of money from his family for the purchase of hygiene items and food from the detention facility's commissary. These monies were deposited into Bell Farmer's commissary account at the detention facility.

47.     Sheriff Hunter charged various fees to Bell Farmer's commissary account, including fees for the blood tests ordered by Dr. DeLeon and multiple fees for Bell Farmer's prescription anti-seizure medications.

48.     These charges prevented Bell Farmer from buying the food and hygiene items he wanted from the detention facility commissary.

49.    On November 10, Bell Farmer became frustrated and sent a written inmate request complaining about back-to-back charges for his medications.

50.    A nonparty staff member responded on November 12 and directed Bell Farmer to contact a second nonparty staff member.

51.    On November 16, Bell Farmer submitted a request to the second nonparty staff member and said the following:

> I've been charged twice in 5 days for the same meds.  I'm not understanding.  It has the same date as before.  I was already charged for this.  It says 11/5/21, then 11/10/21.  I was charged again fro the meds on 10/20/21 and 11/3/21.  I was charged back to back for the same thing again [for] which I was already charged on 10/20/21 and 11/3/21.  I'm just ready to stop taking this medicine until my family brings it out here [themselves].  Please discontinue these meds.  I don't want any more.  I'll finish taking the meds that I'm on, but I don't need to order any more.  My auntie will start bringing it from now on, so that means don't charge my account again.  I don't want the meds any more.  That's my choice and my right to choose.  Please and thank you.  I don't want you to order any more meds.  Discontinue it please.

(Quoted language cleaned up.)

52.    Later that day, Bell Farmer submitted a further written request on this issue.  He wrote:

> I wrote to Miss Hedgepath and I advised her that I want to discontinue my meds.  Whatever I have left I'll finish them.  But I don't want to order any more.  My family will bring my meds from here on out.  They will bring the form to release my information to them, so I don't need any more.  You don't have to order any more.  Please and thank you.  You can bring the form so I can sign saying don't order any more

medication. It's hitting my account too much back to back, so I'm having my aunt get it from now on. Please and thank you.

(Quoted language cleaned up.)

53. On November 17, defendant Nurse Bines visited Bell Farmer and had him sign a form titled "Refusal of Health Care Services." This form stated Bell Farmer was refusing his medication. The form additionally bears the handwritten notation, "All medication, due to cost, states family will bring."

54. On information and belief, Nurse Bines explained to Bell Farmer that he could avoid the costs of his anti-seizure medications by signing the refusal form and having his family bring the medications instead.

55. On information and belief, Nurse Bines further told Bell Farmer that the Columbia County Detention Facility would accept the anti-seizure medications brought by Bell Farmer's family.

56. On November 30, Bell Farmer had an argument with defendant Lieutenant Cedric May over the food Bell Farmer was receiving. In the course of the argument, Bell Farmer accused Lieutenant May of lying about whether pork was served.

57.    Lieutenant May's pique is apparent in his response.   He wrote the following:

> Well throw it away then if that's what you think.   You're not on any special diets or any religious diets that have been authorized.   So I have to go with what I'm told.   Another thing is now with food shortages, you either eat what they serve or throw it out since food is becoming an issue to get.   We're looking at going to soy bean products next.

(Quoted language cleaned up.)

58.    Bell Farmer spent much of the next six weeks in disciplinary confinement without privileges to communicate with his family.

59.    On information and belief, other inmates contacted Bell Farmer's family on his behalf to inform them that Bell Farmer was not receiving his medications.

60.    Bell Farmer's family contacted the Columbia County Detention Facility on multiple occasions during this period to make arrangements to bring Bell Farmer's anti-seizure medications.

61.    On each such occasion, an employee at the Columbia County Detention Facility, who may have been Lieutenant May or who may have been defendant John Doe, said that outside medications could not be accepted and assured the family members that Bell Farmer was receiving his anti-seizure medications.

62.     Bell Farmer did not regain privileges to communicate with his family until January 11, 2022, or later.

63.     On Friday, January 14, 2022, Bell Farmer's mother, Patty Gaines, telephoned the Columbia County Detention Facility to make arrangements to bring Bell Farmer's anti-seizure medications.

64.     Gaines spoke with either Lieutenant May or John Doe.

65.     Lieutenant May or John Doe told Gaines that the Columbia County Detention Facility could not accept outside medications.

66.     Lieutenant May or John Doe further assured Gaines that Bell Farmer was receiving his anti-seizure medications as prescribed.

67.     This was not true.

68.     At 6:30 p.m. that same day, January 14, Bell Farmer wrote an inmate medical request that said the following:

> My family went to the pharmacy today and they had her to call because they say that the nurse here will have to call the pharmacy. So my aunt called today. It was shift change. The officer told her they would have the nurse call her back. Her number is 386-292-6014. Miss Tiffany, could you please call her back and let her know what to do? I've been feeling weak. My head [is] starting to hurt bad. Those are signs of my seizures. I've been losing my appetite and throwing up my food. I really need my medication. Please and thank you.

(Quoted language cleaned up.)

69.    Because January 14 was a Friday, pursuant to Sheriff Hunter's policy or custom, there was no medical staff at the Columbia County Detention Facility to review Bell Farmer's inmate medical request.

70.    On information and belief, Bell Farmer had made multiple oral requests for his anti-seizure medications between the time he signed the medication refusal form and January 14.

71.    Pursuant to Sheriff Hunter's policy or custom of making it difficult for an inmate to receive medications after having once signed a refusal form, these oral requests were ignored.

72.    By January 14, Bell Farmer had not had his anti-seizure medications in more than a month and was desperately in need of them.

73.    On Saturday, January 15, Bell Farmer had a seizure at approximately 4:50 a.m.  This was the first in a series of seizures that would kill him that morning.

74.    Columbia County Detention Facility officers took Bell Farmer's vital signs and then phoned defendant Nurse Stalvey.

75.    The officers told Nurse Stalvey that Bell Farmer had a history of seizures and had been refusing his medications.

76.    Pursuant to Sheriff Hunter's policy or custom of not calling an ambulance for an inmate's seizure, Nurse Stalvey permitted the guards to return Bell Farmer to his bunk.

77.    At approximately 6:00 a.m., Bell Farmer had another seizure.

78.    Bell Farmer was too weak to stand or walk, so guards placed him in a wheelchair and wheeled him to an observation cell.

79.    The guards helped Bell Farmer onto two thin vinyl mats on the floor of the cell and left him by himself.

80.    Approximately ten minutes later, video evidence shows Bell Farmer convulsing.

81.    Shortly thereafter, the video shows Bell Farmer's chest stop rising and falling.  It is clear that Bell Farmer has passed away.

82.    Bell Farmer's seizure disorder caused his death because he had not been receiving his prescribed anti-seizure medications.

83.    Bell Farmer would not have died on January 15, 2022, had he been receiving his prescribed anti-seizure medications.

COUNT I

DELIBERATE INDIFFERENCE TO MEDICAL NEED
UNDER 42 U.S.C. § 1983
AGAINST SHERIFF MARK HUNTER

84.    This action is brought under 42 U.S.C. § 1983 to remedy the deprivation under color of state law, of rights guaranteed by the Fourteenth Amendment to the United States Constitution.

85.    The plaintiff incorporates the allegations of paragraphs 1 through 83 above.

86.    As sheriff of Columbia County, Florida, Sheriff Hunter was responsible in his official capacity for the policies and customs of the Columbia County Detention Facility.

87.    Sheriff Hunter maintained a policy or custom of encouraging inmates at the Columbia County Detention Center to sign forms refusing their prescription medications.

88.    The known or obvious consequences of Sheriff Hunter's policy are the denial of medical treatment for serious medical needs for inmates who yield to the encouragement and sign such forms.

89.    Sheriff Hunter's policy resulted in Bell Farmer not receiving the anti-seizure medication he needed.

16

90.     Sheriff Hunter's policy was applied with respect to Bell Farmer with deliberate indifference to its known or obvious consequences of denying Bell Farmer the anti-seizure medication he needed.

91.     Sheriff Hunter maintained a policy or custom of having no medical staff on duty at the Columbia County Detention Center from approximately 6:00 p.m. on Fridays until approximately 8:00 a.m. on Mondays.

92.     The known or obvious consequences of Sheriff Hunter's policy are the denial of medical treatment for serious medical needs for inmates who require medical treatment between 6:00 p.m. on Fridays and 8:00 a.m. on Mondays.

93.     Sheriff Hunter's policy resulted in Bell Farmer not receiving the anti-seizure medication he needed when he pleaded for it in writing at approximately 6:30 p.m. on Friday, January 14, 2022.

94.     Sheriff Hunter's policy was applied with respect to Bell Farmer with deliberate indifference to its known or obvious consequences of denying Bell Farmer the anti-seizure medication he needed.

95.     Sheriff Hunter maintained a policy or custom of not calling an ambulance for inmates who suffer seizures.

96.   The known or obvious consequences of Sheriff Hunter's policy are the denial of access to adequate emergency medical treatment for such inmates.

97.   Sheriff Hunter's policy resulted in Bell Farmer not receiving the emergency medical treatment he needed when he began having seizures in the early morning hours of January 15, 2022.

98.   Sheriff Hunter's policy was applied with respect to Bell Farmer with deliberate indifference to Bell Farmer's serious medical need.

99.   Sheriff Hunter denied Bell Farmer his necessary anti-seizure medications for non-medical reasons.

100.   Sheriff Hunter denied Bell Farmer necessary emergency medical treatment on the morning of his death for non-medical reasons.

WHEREFORE Courtney Walters, as personal representative of the estate of Joshua Bell Farmer, respectfully prays for judgment against Sheriff Mark Hunter for compensatory and punitive damages, for attorney's fees and costs under 42 U.S.C. § 1988 and other laws, and for such other and further relief as the Court finds just and proper.

COUNT II

DELIBERATE INDIFFERENCE TO MEDICAL NEED
UNDER 42 U.S.C. § 1983
AGAINST ERIN ALFORD, BRITTANY BINES
CEDRIC MAY, ASHLEY STALVEY, & JOHN DOE

101.   This action is brought under 42 U.S.C. § 1983 to remedy the deprivation under color of state law, of rights guaranteed by the Fourteenth Amendment to the United States Constitution.

102.   The plaintiff incorporates the allegations of paragraphs 1 through 83 above.

103.   Alford was subjectively aware of Bell Farmer's serious medical need for anti-seizure medications to treat a life-threatening medical condition.

104.   Bines was subjectively aware of Bell Farmer's serious medical need for anti-seizure medications to treat a life-threatening medical condition.

105.   May was subjectively aware of Bell Farmer's serious medical need for anti-seizure medications to treat a life-threatening medical condition.

106.   In fact, on December 31, 2021, Bell Farmer wrote to May and complained about being charged a fee for a lab test ordered by a doctor.  May responded on January 5, 2022, that the charges were proper.  But May also

19

reminded Bell Farmer that he can avoid the fees by refusing treatment. May wrote: "Because you are under our doctor[']s care and your seizures can be life threatening. We[']re responsible for your care remember that and you can refuse but due to your medical issues for your safety labs were down."

107. Stalvey was subjectively aware of Bell Farmer's serious medical need for anti-seizure medications to treat a life-threatening medical condition.

108. Doe was subjectively aware of Bell Farmer's serious medical need for anti-seizure medications to treat a life-threatening medical condition.

109. Each of the foregoing defendants participated in encouraging Bell Farmer to sign a form refusing his medications with the promise that his family could bring the medications.

110. In failing thereafter to ensure Bell Farmer's family actually brought the medications, or to ensure Bell Farmer received the medications from some other source, Alford was deliberately indifferent to Bell Farmer's serious medical need.

111. In failing thereafter to ensure Bell Farmer's family actually brought the medications, or to ensure Bell Farmer received the medications from some other source, Bines was deliberately indifferent to Bell Farmer's serious medical need.

112.  In failing thereafter to ensure Bell Farmer's family actually brought the medications, or to ensure Bell Farmer received the medications from some other source, Stalvey was deliberately indifferent to Bell Farmer's serious medical need.

113.  In failing thereafter to ensure Bell Farmer's family actually brought the medications, or to ensure Bell Farmer received the medications from some other source, May was deliberately indifferent to Bell Farmer's serious medical need.

114.  In failing thereafter to ensure Bell Farmer's family actually brought the medications, or to ensure Bell Farmer received the medications from some other source, Doe was deliberately indifferent to Bell Farmer's serious medical need.

115.  In turning away Bell Farmer's family when they attempted to bring his medications, May was deliberately indifferent to Bell Farmer's serious medical need.

116.  In turning away Bell Farmer's family when they attempted to bring his medications, Doe was deliberately indifferent to Bell Farmer's serious medical need.

117.  In falsely assuring Bell Farmer's family that Bell Farmer was receiving his anti-seizure medications, May was deliberately indifferent to Bell Farmer's serious medical need.

118.  In falsely assuring Bell Farmer's family that Bell Farmer was receiving his anti-seizure medications, Doe was deliberately indifferent to Bell Farmer's serious medical need.

119.  In failing to ensure an ambulance was called for Bell Farmer after he began to suffer seizures on January 15, 2022, Stalvey was deliberately indifferent to Bell Farmer's serious medical need.

WHEREFORE Courtney Walters, as personal representative of the estate of Joshua Bell Farmer, respectfully prays for judgment against Erin Alford, Brittany Bines, Cedric May, Ashley Stalvey, and John Doe for compensatory and punitive damages, for attorney's fees and costs under 42 U.S.C. § 1988 and other laws, and for such other and further relief as the Court finds just and proper.

## COUNT III

### WRONGFUL DEATH
### UNDER §§ 768.16 ET SEQ., FLORIDA STATUTES
### AGAINST ALL DEFENDANTS

120.  This action is brought under the Florida Wrongful Death Act, sections 768.16 et seq., Florida Statutes, against all defendants.

121.   The plaintiff incorporates the allegations of paragraphs 1 through 83 above.

122.   All defendants owed Bell Farmer a duty to provide him reasonable medical care in the Columbia County Detention Facility.

123.   All defendants breached their duty by negligently or recklessly telling Bell Farmer he could avoid fees for his medication by signing a refusal form and having his family bring his medication.

124.   All defendants further breached their duty by negligently or recklessly failing to follow up to ensure Bell Farmer's family actually brought the medication or to ensure that Bell Farmer received the medication from some other source.

125.   May and Doe further breached their duty by turning away Bell Farmer's family when they attempted to bring the medication for Bell Farmer.

126.   May and Doe further breached their duty by assuring Bell Farmer's family that he was receiving his medications at the Columbia County Detention Facility.

127.   Stalvey further breached her duty by failing to provide reasonable emergency medical care to Bell Farmer on the morning of January 15, 2022, when he began having seizures.

128.   Sheriff Hunter further breached his duty by failing to ensure the Columbia County Detention Facility was staffed sufficiently to provide medical care to Bell Farmer from approximately 6:00 p.m. on Friday, January 14, 2022, until his death the next morning.

129.   As a direct and proximate result of the breaches described above, Bell Farmer died.

130.   Plaintiff Courtney Walters, as personal representative of the estate of Bell Farmer, brings this action to recover the following damages sustained as a direct and proximate result of decedent's death:

      a.    Medical and funeral expenses;

      b.    Prospective net accumulations of the estate;

      c.    Mental pain and suffering of the surviving parents; and

      d.    All other damages awardable under applicable law.

WHEREFORE Courtney Walters, as personal representative of the estate of Joshua Bell Farmer, respectfully prays for judgment against all defendants for damages and for such other and further relief as the Court finds just and proper.

JURY DEMAND

131.   The plaintiff, Courtney Walters, as personal representative of the

estate of Joshua Bell Farmer, hereby demands a trial by jury pursuant to

Federal Rule of Civil Procedure 38 on all issues so triable.

DATED: January 12, 2024.

/s/ W. Bradley Russell
W. Bradley Russell
Florida Bar No. 29492
Russell & Russell, Attorneys at Law, P.A.
6550 St. Augustine Road, Suite 305
Jacksonville, Florida 32217
Tel. 904-527-8813
Email: brad@russellandrussell.law

Lead counsel for Courtney Walters, as
personal representative of the estate of
Joshua Bell Farmer